IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

HERBERT HARDIMON,                            )
                                             )
        Plaintiff,                           )
                                             )
        v.                                   )        Case No.   21-cv-298-RJD
                                             )
SCF LEWIS AND CLARK FLEETING LLC             )
and AMERICAN RIVER                           )
TRANSPORTATION COMPANY, LLC,                 )
                                             )
        Defendants.                          )

**ORDER**

**DALY, Magistrate Judge:**

This matter is before the Court on Defendant American River Transportation Co., LLC's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 51).   For the reasons set forth below, Defendant's Motion is **GRANTED**.

**<u>Background</u>**

Plaintiff Herbert Hardimon filed this action pursuant to 46 U.S.C. § 30104 ("the Jones Act") and the General Maritime Law of the United States alleging he sustained injuries on or about February 13, 2020 while in the course of his employment with Defendant SCF Lewis and Clark Fleeting LLC ("SCF").   More specifically, Plaintiff alleges he was injured after he slipped on ice while descending a ladder on a barge, causing him to fall into the Mississippi River.   Plaintiff's fall allegedly occurred after he had boarded a barge that had been damaged by one or more barges that had broken away from a fleet controlled by American River Transportation Company, LLC ("ARTCO").   In his Third Amended Complaint, Plaintiff alleges Defendant SCF breached its statutory duties and its warranty of seaworthiness, which proximately caused his injuries.

Page **1** of **11**

Plaintiff also alleges Defendant SCF breached its duty of adequate maintenance and cure. Plaintiff also names ARTCO as a defendant.  Plaintiff alleges ARTCO's negligence was a proximate cause of his injuries and damages because, he alleges, due to ARTCO's failure to properly moor, monitor, and retrieve certain barges, it was reasonably foreseeable that employees of unrelated entities, such as Plaintiff, would sustain injuries in repairing damage caused by ARTCO's barges.   Plaintiff further alleges that ARTCO had actual knowledge that the owner of a barge damaged by a breakaway barge would conduct "emergency response and recovery efforts" and other measures in response to the damage, and that in the course of performing repairs, it was reasonably foreseeable that employees of unrelated entities, such as Plaintiff, would sustain injuries repairing the damage.

## Analysis

ARTCO asserts dismissal under Rule 12(b)(6) is warranted because Plaintiff's Third Amended Complaint does not allege sufficient facts to establish proximate cause and because ARTCO did not owe a duty of care to Plaintiff.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal if a complaint fails to state a claim upon which relief can be granted.   In considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all possible inferences in favor of the plaintiff.   *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quotations omitted).   A plaintiff need not set out all relevant facts or recite the law in his or her complaint; however, the plaintiff must provide a short and plain statement that shows he or she is entitled to relief.   *See* Fed. R. Civ. P. 8(a)(2).   Thus, a complaint will not be dismissed if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).

"The elements of a negligence action under maritime law are essentially the same as land based negligence under the common law." *Quirin v. Lorillard Tobacco Co.*, 17 F.Supp.3d 760, 767-68 (N.D. Ill. 2014) (citing *Pearce v. United States*, 261 F.3d 643, 647 (6th Cir. 2001) (additional citations and internal quotations omitted). To establish maritime negligence, a plaintiff must demonstrate: (1) a duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) injury sustained by the plaintiff; and (4) a causal connection between the defendant's conduct and the plaintiff's injury. *SCF Waxler Marine, L.L.C. v. Aris T M/V*, 24 F.4th 458, 470 (5th Cir. 2022). To prevail in a negligence action under maritime law, "a plaintiff must establish that the defendant's breach of duty is the but-for and proximate cause of the injury complained of." *Id.* (citing *In re Deepwater Horizon*, 739 F.3d 790, 828 (5th Cir. 2014). Proximate cause is essentially a question of foreseeability. As stated by the Seventh Circuit, "[a] defendant's conduct is the proximate cause of a plaintiff's injury if all events following that conduct, including any actions by the plaintiff, are its reasonably foreseeable results." *Suzik v. Sea-Land Corp.*, 89 F.3d 345, 348 (7th Cir. 1996)). In maritime law, proximate cause is "that cause which in a direct, unbroken sequence produces the injury complained of and without which such injury would not have happened." *United States v. Egan Marine Corp.*, 808 F.Supp.2d 1065, 1081 (N.D. Ill. 2011) (citation omitted). In other words, "a party's negligence is actionable only if it is the 'legal cause' of the plaintiff's injuries, which is something more than 'but for' causation — the negligence must be a substantial factor in causing the injuries." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 213-214 (5th Cir. 2010) (internal quotations omitted).

***Proximate Cause***

With regard to proximate cause, ARTCO asserts the Court could dismiss the Third

Amended Complaint on the basis that Plaintiff failed to expressly allege that "but for" the breakaway and the damage to the cargo cover he would not have been on the barge.   ARTCO also asserts, however, that if the Court finds this is a reasonable inference from Plaintiff's allegations, Plaintiff failed to allege facts which, if true, would establish proximate cause.   Generally, ARTCO asserts the negligence alleged is too attenuated from the injury to constitute proximate cause.   ARTCO also asserts that merely causing someone to be in the location where they are injured is not enough for proximate cause.   The Court agrees.

In his Third Amended Complaint, Plaintiff alleges ARTCO was negligent in mooring certain barges and that, as a result of this negligence, it was reasonably foreseeable that the consequences of a barge breakaway included "that the breakaway barge could damage other barges and structures" … and that it was reasonably foreseeable "that unrelated entities would attempt to repair the damage done to their barges and other structures" and that it was further foreseeable that said repairs would attempt to be made "as soon as possible" and "could therefore be performed in inclement or even dangerous weather conditions."   (Doc. 49 at ¶ 31, 32).   A simple reading of Plaintiff's complaint reveals the tenuous connection between ARTCO's alleged negligence and Plaintiff's injury.   While the Court is acutely aware of the proposition that "legal causation is much broader than the last act of an imperiled claimant," as espoused by the Seventh Circuit in *Glenview Park Dist. v. Melhus*, 540 F.2d 1321, at *1325 (7th Cir. 1976), the Court finds no support in this Circuit's precedent to extend foreseeability to the bounds that Plaintiff suggests.

In making this determination, the Court has carefully reviewed the cases relied on by Plaintiff.   In particular, in the Third Amended Complaint, Plaintiff cites to *Pan-American Petroleum & Transp. Co. v. United States*, 27 F.2d 684 (2d Cir. 1928), to effectively stand for the proposition that it was reasonably foreseeable unrelated entities would attempt to make barge

repairs as soon as possible and that the repairs could be performed in inclement or even dangerous weather conditions.   In *Pan-American*, the court determined that a ship owner could not recover "detention damages" incurred when said owner lays up a ship for repairs before the "season for overhaul" unless the owner proves the need for immediate repairs was proximately caused by the defendant.   *Id.* at 685-86.

While the Court agrees with the general proposition that certain repairs to a ship must be made immediately to ensure seaworthiness, *Pan-American's* applicability in this instance is unclear.   First, the issue in *Pan-American* was the payment of damages related to lost income due to the need to dock the ship for collision repairs.   This is clearly not the issue here.   The other case cited by Plaintiff for the proposition related to emergency repairs, *Mon River Towing, Inc. v. Salvage Co.*, Civil Action No. 06-1499, 2010 WL 1337693 (W.D. Pa. Mar. 31, 2010),   is also inapposite.   In *Mon River*, the court held that the plaintiff's conduct in sending the damaged barges for immediate repair was reasonable and, as such, the plaintiff could recover lost profits in dry-docking the vessels.   *Id.* at *11.   Similar to *Pan-American*, *Mon River* provides no support for a finding that Plaintiff's injury was proximately caused by ARTCO's alleged negligence.

Though neither party cites to case law with analogous facts, ARTCO presented decisions in which courts have declined to find foreseeability as to damages beyond those caused directly by downstream allisions, which the Court finds instructive.   In particular, as cited by ARTCO, in *Petition of Kinsman Transit Co.*, 338 F.2d 708, 725 (2d Cir. 1964) [*Kinsman I*], the Second Circuit held that "a ship insecurely moored in a fast flowing river is a known danger not only to herself but to the owners of all other ships and structures down-river, and to persons upon them."   338 F.2d at 722.   In *Kinsman I*, the negligent mooring of the MacGilvray Shiras permitted that vessel to tear from its moorings and careen down the Buffalo River, where it crashed into a second vessel, The

Tewksbury.  *Id.* at 712.  These vessels were subsequently impelled by the force of the current against a bridge, and the bridge eventually collapsed.  *Id.* at 712-13.  The two ships, wedged together in the wreckage, "substantially dammed the flow [of the river], causing water and ice to back up and flood installations on the banks with consequent damage [to a point] … nearly three miles upstream."  *Id.* at 713.  In assessing whether it would be improper to hold the various defendants liable for the full range of damages flowing from their negligent conduct, the Second Circuit explained that "[s]omewhere a point will be reached when courts will agree that the link [for damages for which the forces that he risked were a cause in fact] has become too tenuous – that what is claimed to be consequence is only fortuity," providing, for example, that had the impact that caused the destruction of the bridge delayed the arrival of a doctor, with the consequent loss of a patient's life, few judges would impose liability on the parties in *Kinsman*.  *Id.* at 725.

In *Petition of Kinsman Transit Co.*, 388 F.2d 821 (2d Cir. 1968) [*Kinsman II*], the Second Circuit found where the line of fortuity could be drawn.  In *Kinsman II*, the two claimants, Cargill, Inc. and Cargo Carriers, Inc. sought reimbursement for accident-related additional expenditures they incurred as a necessity to fulfill various contractual obligations.  388 F.2d at 823.  Although the court felt the damages incurred by the parties were "foreseeable" consequences of the defendants' acts (as that term had been defined in *Kinsman I*), it found that neither claimant "suffered any direct or immediate damage for which recovery is sought" and "[t]he instant claims occurred only because the downed bridge made it impossible to move traffic along the river."  *Id.* at 824-25.  Accordingly, the court held "the connection between the defendants' negligence and the claimants' damages [was] too tenuous and remote to permit recovery."  *Id.*

In his response to ARTCO's motion, Plaintiff relies on *Glenview Park Dist. v. Melhus*, 540 F.2d 1321 (7th Cir. 1976), and asserts the court in *Glenview* specifically cited *Kinsman* as an

illustration of where the district court "had gone wrong."   While the court in *Glenview* cited *Kinsman I* for support for its statement that "by ignoring the prior omissions of Glenview which contributed to the catastrophe, the district court applied an erroneously narrow concept of proximate cause," it failed to extrapolate or provide any analysis as to how the concept of proximate cause was erroneously applied or what aspect of the analysis it found erroneous.   540 F.2d at 1325.   Further, the undersigned finds *Kinsman II* more relevant and persuasive in this instance, and said case was not specifically cited by the court in *Glenview*.   Moreover, the Court finds Plaintiff's reliance on *Glenview* misplaced in this instance.

In *Glenview*, a widow brought an admiralty wrongful death action against a Glenview Park District, asserting it was negligent in the operation of a canoe trip during which the plaintiff's husband drowned when he was swept into the water by a low-hanging branch.   540 F.2d at 1322. The park district supervisors did not check for river conditions prior to embarking on the trip, and the river was at flood stage, with the result that trees on the banks were in the water and the water was closer to overhanging branches.   *Id.*   In finding the district court erred and should have found against Glenview on the question of negligence, the Seventh Circuit found it was "clearly erroneous to rule that the omissions of Glenview did not proximately cause the death of George Malhus," specifically citing Glenview's "failure to check water conditions and to warn participants about overhanging branches" as negligent omissions that acted as proximately causative factors resulting in the decedent's canoe being among the branches.   *Id.* at 1328-29.

This fact pattern is clearly not reminiscent of the facts alleged in this case.   Plaintiff, however, asserts it makes clear that in admiralty cases such as this, one cannot ignore a prior act that contributes to the ultimate injury, and argues that because Plaintiff "would not have been on the barge to assist in repairs had the barge not broken away from its moorings," ARTCO's fleet

breakaway clearly contributed to the injury at issue.   The Court disagrees with Plaintiff's interpretation of *Glenview*.   In *Glenview*, the Seventh Circuit reiterated that "the content of the concept of proximate cause must be determined by the peculiar facts and circumstances of the particular case," and remarked that the various definitions of the concept fail to " 'afford a definite and invariable rule whereby a line can be drawn between those causes which the law regards as sufficiently proximate and those which are too remote to be the foundation of an action….'"   *Id.* at 1325 (quoting 65 C.J.S. Negligence § 103, at 1134 (1966)).   Thus, the undersigned finds the *Glenview* court still recognized the circumstance in which a negligent act may be too far removed from the claimed injury to satisfy the boundaries of proximate cause.   Indeed, if the Court adopted Plaintiff's view of proximate cause, it is not clear what line, if any, would be drawn, no matter how tenuous the connection from the purported negligence to the alleged injury.

Admittedly, the Court has had little success in finding a factually-analogous case in this instance, particularly a maritime case.   However, the Supreme Court espoused that "[i]n ruling upon whether a defendant's blameworthy act was sufficiently related to the resulting harm to warrant imposing liability for that harm on the defendant, courts sitting in admiralty may draw guidance from, *inter alia*, the extensive body of state law applying proximate causation requirements and from treatises and other scholarly sources." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 839 (1996).   Thus, the Court finds support for drawing certain limitations as to proximate cause and foreseeability in light of certain decisions applying Illinois state law.

In *Cannon v. Commonwealth Edison Co.*, the plaintiff was injured upon descending his basement stairs after his residence suffered a power outage.   250 Ill.App.3d 379, 380 (Ill. App. Ct. 1993).   The power outage was caused by an unknown malfunction of a lightning arrester owned by the defendant that malfunctioned in an unknown manner.   *Id.*   The court concluded that the

Page **8** of **11**

trial judge properly determined the proximate cause issue as a matter of law and properly held that the plaintiffs failed to allege facts that would support a finding that the actions of the defendant proximately caused the plaintiff's injuries.   *Id.* at 385.   In so finding, the court remarked that the electric company defendant created a condition, the blackout, that made the plaintiff's fall possible.   *Id.*   However, the plaintiff voluntarily descended to the basement, and his own act of walking down the stairs, whether or not he used a light or a guard rail, caused his fall and injuries. *Id.*   Accordingly, the court held the blackout was merely a condition present at the time of the injuries and might have made the injuries more possible, but the blackout was not, as matter of law, the proximate cause of the plaintiff's injuries.   *Id.*

The Court finds this analysis persuasive insofar as the pleadings in this case arguably demonstrate that Plaintiff was on the barge at Mile Marker 177 due to ARTCO's alleged negligence.   However, similar to the plaintiff in *Cannon*, although ARTCO's alleged negligence may have caused Plaintiff to be in a certain location where injuries were eventually sustained, this placement was not the proximate cause of Plaintiff's injuries.   Indeed, in this instance, Plaintiff alleges that his injury was caused when he slipped on ice while descending a ladder.   It is simply not enough that ARTCO's alleged negligence may have initially placed him in the location where injury was eventually sustained to establish proximate cause.

Furthermore, in reviewing the Third Amended Complaint, Plaintiff fails to allege that he was assigned to the barge located at Mile Marker 177 on February 13, 2020 for the purpose of repairing damage caused by the ARTCO barge.   Plaintiff alleges that the barge he "was assigned to board had been damaged by one or more barges that had broken away from a fleet controlled by defendant ARTCO," and that "damage included damage to at least one of the hatch covers on the barge."   (Doc. 49 at ¶ 14).   Plaintiff then alleges he "boarded the barge with another SCF

deckhand to remove the hatch cover." (*Id.* at ¶ 15).   Plaintiff alleges that while working to remove this hatch cover with another SCF deckhand he "descended the ladder and stepped back onto the deck [and] his foot slipped on the ice and he fell into the Mississippi River." (*Id.*). Notably, Plaintiff does not allege that the hatch cover he and the other deckhand were removing was actually damaged in the ARTCO collision, or that said cover needed to be removed because it was damaged.   Moreover, based on the allegations in the Third Amended Complaint, it does not appear that Plaintiff's injuries had any relation to any damage created by the ARTCO barge, as Plaintiff sustained his injuries while descending a ladder and attempting to step back onto the deck. Based on the allegations in the Complaint, Plaintiff's actions on February 13, 2020 relating to the use of a crane and raising hatch covers was typical for his work of cleaning barges (*see id.* at ¶ 6). As such, Plaintiff failed to set forth any allegation to casually link ARTCO's negligence and the damage sustained to the barge on Mile Marker 177 with his injuries.   If the Court were to accept Plaintiff's allegations as sufficient for a finding of proximate cause, ARTCO may be liable for *any* injury sustained by Plaintiff while he was on the barge located at Mile Marker 177.   This view of proximate cause would be far too expansive and beyond the boundaries considered in the "substantial factor" analysis.

Because the Court finds Plaintiff's Third Amended Complaint fails to allege proximate cause, the Court need not determine whether ARTCO owed a duty of care to Plaintiff.

## Conclusion

Based on the foregoing, Defendant American River Transportation Co., LLC's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 51) is **GRANTED**.   Plaintiff's claims set forth in the Third Amended Complaint against American River Transportation Co., LLC are **DISMISSED WITH PREJUDICE**.   Dismissal with prejudice is warranted because Plaintiff's

response does not address ARTCO's request to dismiss the claims against it with prejudice, nor does Plaintiff request leave to replead.   Second, Plaintiff already had an opportunity to amend his complaint following ARTCO's filing of its initial Motion to Dismiss filed on December 23, 2021 (Doc. 33).   *See Smith v. Ill. Sch. Dist. U-46*, 120 F.Supp.3d 757, 777 (N.D. Ill. 2015) ("Having amended his complaint twice in response to two previous motions to dismiss, Smith has had three opportunities to plead his claims, so dismissal of his federal claims with prejudice and without an opportunity to amend is warranted.").

**IT IS SO ORDERED.**

**DATED: July 12, 2022**

*s/* *Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**